**In the Matter of Frank R. SCOTTI, Debtor.**

**Bankruptcy No. 98–25713 (WFT).**

United States Bankruptcy Court, D. New Jersey.

Jan. 14, 2000.

Stern, Lavinthal, Norgaard & Kapnick, by Adolfo De Martinis, for Debtor.

Forman Holt & Eliades LLC, By Joseph Cerra, for Chapter 7 Trustee.

## *OPINION*

WILLIAM F. TUOHEY, Bankruptcy Judge.

This proceeding is before the Court based upon an Objection filed by Barbara A. Edwards, Chapter 7 Trustee, on behalf of the Debtor's estate. The Trustee's objection seeks to disallow certain exemptions claimed by the Debtor. A hearing was held before this Court on December 7, 1999, concerning the Trustee's objection and decision was reserved. This Court has jurisdiction over the present matter pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (E), and 28 U.S.C. § 1334.

## *FINDINGS OF FACT*

In August 1993, Frank R. Scotti (hereinafter the "Debtor"), underwent a procedure known as an epidural facet injection. During the procedure, the needle allegedly slipped and penetrated the Debtor's spinal cord, causing him to suffer temporary paralysis, headaches, and various other symptoms. The Debtor, thereafter, filed a medical malpractice action against the physician who administered the ill-fated injection. The Debtor was represented in the medical malpractice action by Paul Faugno, Esq. ("Faugno").

On April 24, 1998, the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code"). Barbara A. Edwards (hereinafter the "Trustee") was appointed as the Chapter 7 Trustee for the Debtor.

The Debtor, thereafter, settled his medical malpractice action for $85,000. After paying attorney's fees and costs, the Debtor's share of the settlement amounts to $48,710.16. The Debtor's share of the proceeds is currently being held by the Trustee.

On September 14, 1999, the Debtor filed an Amendment to Schedule C of his petition. Pursuant to the amended Schedule C, the Debtor seeks to exempt $8,925.00 of his interest in the proceeds of the settlement under 11 U.S.C. § 522(d)(5); $16,150.00 under 11 U.S.C. § 522(d)(11)(D); and $23,635.16 under 11 U.S.C. § 522(d)(11)(E).

On October 13, 1999, the Trustee filed the within Objection to the Debtor's Amended Exemptions.

## DISCUSSION

### A. The Debtor is Entitled to Exempt a Portion of the Settlement Proceeds Under §§ 522(d)(11)(D) and 522(d)(11)(E).

The Debtor claims that $39,785.16 of the settlement proceeds held by Trustee are exempt from distribution pursuant to 11 U.S.C. §§ 522(d)(11)(D) and 522(d)(11)(E). These Bankruptcy Code sections provide as follows:

(d) The following property may be exempted under subsection (b)(1) of this section:

. . .

(11) The debtor's right to receive, or property that is traceable to—

(D) a payment not to exceed $16,150, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent of; or

(E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

11 U.S.C. §§ 522(d)(11)(D) and 522(d)(11)(E).

In opposition, the Trustee argues that the Debtor should not be able to take advantage of either of the above referenced exemptions because: (1) his medical malpractice lawsuit did not assert a claim for lost wages; and (2) the settlement includes damages based on the Debtor's pain and suffering. Therefore, this Court must interpret the meaning of §§ 522(d)(11)(D) and 522(d)(11)(E) in an attempt to determine how much, if any, of the Debtor's settlement proceeds may be exempted from distribution by the Trustee. The Court notes that this may well be an issue of first impression in this jurisdiction.

### 1. *11 U.S.C. § 522(d)(11)(D)*

The § 522(d)(11)(D) exemption explicitly states that it does not cover damage claims for pain and suffering or claims for actual pecuniary losses, such as medical expenses or lost wages. *See In re Claude*, 206 B.R. 374, 376 (Bankr.W.D.Pa.1997). However, courts in numerous jurisdictions have struggled when faced with the task of determining just what this particular exemption was designed to cover. *See In re Ciotta*, 222 B.R. 626, 630 (Bankr.C.D.Cal. 1998) ("The language of . . . the . . . federal exemption statutes is problematic."); *In re Bova*, 205 B.R. 467, 476 (Bankr.E.D.Pa. 1997) ("We find § 522(d)(11)(D) to be a difficult section to understand when read literally.").

Courts have generally found § 522(d)(11)(D) to be ambiguous, providing little, if any, guidance as to just what portion of the debtor's estate is to be exempted. *See In re Territo*, 36 B.R. 667, 670 (Bankr.E.D.N.Y.1984) ("[i]f read literally it could be reasonably concluded from the plain language of the statute that there exists no meaningful exemption for personal injuries, because if actual pecuniary loss

and pain and suffering are excluded from exempt status, as the statute seems to say, there is nothing left."). Courts have also received little comfort from examining the legislative history of § 522(d)(11)(D).[1] For example, the court in *Matter of Lynn*, 13 B.R. 361, 362 (Bankr.W.D.Wis.1981), after reviewing the exemption's legislative history, stated:

"[t]his legislative history cannot be taken seriously. It specifically excludes all of the types of losses that generally make up a personal injury award. If the legislative history for 11 U.S.C. § 522(d)(11)(D) is used to interpret this exemption, it has no meaning. The meaning of the exemption must be determined by the words of the statute itself and law interpreting those words."

13 B.R. at 362.

■ Despite § 522(d)(11)(D)'s perceived ambiguity, case law construing the exemption is, however, fairly easy to apply. First, courts note that Federal Rule of Bankruptcy Procedure 4003(c) provides that "[t]he objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections." *In re Ciotta*, 222 B.R. at 629; *In re Bova*, 205 B.R. at 476 ("[E]xemption laws are generally construed broadly in favor of claimants."). Moreover, the *prima facie* presumption is that a claimed exemption is correct. *See In re Dunn*, 215 B.R. 121, 130 (Bankr. E.D.Mich.1997) (construing § 522(d)(10)(E)). Courts have also concluded that "[i]f the trustee fails to carry the burden of proving by a preponderance of the evidence that the exemption should be disallowed, the exemption will stand." *Id.* (quoting *In re Mann*, 201 B.R. 910, 915 (Bankr.E.D.Mich.1996)). Therefore, in the case at bar, the Trustee must show, by a preponderance of the evidence, that the Debtor is improperly claiming the proceeds of the medical malpractice settlement as exempt.

■ A review of the relevant case law leads this Court to conclude that § 522(d)(11)(D) was designed to prevent exemptions based solely on pain and suffering, unaccompanied by a bodily injury. *See In re Ciotta*, 222 B.R. at 632. Case law also suggests that § 522(d)(11)(D) applies to exempt awards or settlements arising from personal injuries accompanied by emotional trauma. *See id.* at 632–33 ("The fact that an injury is accompanied by a large amount of pain and suffering should not prevent a debtor from claiming the exemption.").

■ Therefore the key to understanding and applying § 522(d)(11)(D) is defining "personal bodily injury," as that term is used in the statute. The statute, unfortunately, fails to provide such a definition. Case law, however, suggests that in order for a debtor to utilize § 522(d)(11)(D) the debtor must have suffered at least "appreciable" or "cognizable" physical injury. *See In re Barner*, 239 B.R. 139, 142 (Bankr.W.D.Ky.1999); *In re Ciotta*, 222 B.R. at 633. Damages for loss of a limb, physical disability, bone fractures and dislocations, and loss of consortium have all qualified for exempt status under the statute. *See In re Lester*, 141 B.R. 157, 157 (S.D.Ohio 1991); *In re Territo*, 36 B.R. at 669–670; *In re Blizard*, 81 B.R. 431 (Bankr.W.D.Ky.1988); *In re Lynn*, 13 B.R. at 361.

■ In this case, the Debtor alleges that he suffered injury when his treating physician inadvertently injected a needle into his spine. Debtor's injuries included, among other things, loss of movement of his arms and legs and headaches. Debtor's malpractice attorney supports these

---

1. Regarding § 522(d)(11)(D), House report 95–595 states that:

This provision in subparagraph (D)(11) is designed to cover payments in compensation of actual bodily injury, such as the loss of a limb, and is not intended to include the attendant costs that accompany such loss, such as medical payment, pain and suffering, or loss of earnings. Those items are handled separately by the bill.

H.R. 95–595 at 362, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6318.

allegations. (Certification of Paul Faugno, Esq. ¶ 1.) This Court finds the Debtor's injuries more than sufficient to meet the above referenced "appreciable" or "cognizable" physical injury test.

In opposition, the Trustee argues that the Debtor endured only pain and suffering as a result of the medical malpractice, not physical injury. She claims that "not one of the injuries identified therein was ... connected to this ... medial malpractice." (Certification of Barbara A. Edwards ¶ 15.) The Trustee, however, fails to support this statement with any evidence. In fact, the Trustee admits to reviewing medical reports which indicate the faulty injection caused the Debtor to suffer headaches and two days of immobility. (Certification of Barbara A. Edwards ¶ 17.)

The Trustee also argues that § 522(d)(11)(D) should not apply because the Debtor's medical malpractice settlement encompassed an award for pain and suffering. The Court finds the Trustee's argument to be unpersuasive because, as stated above, compelling case law holds that a debtor may exempt the proceeds of a personal injury settlement, which include damages for pain and suffering, as long as the debtor also endured appreciable or cognizable physical injury. The Court finds that the severity of Debtor's injuries do rise to the level of appreciable or cognizable physical injury, and therefore, he may properly exempt $16,150 of the proceeds of the personal injury settlement.

### 2. *11 U.S.C. § 522(d)(11)(E)*

■ This case also presents the question of whether the Debtor may exempt $23,635.16 [2] under § 522(d)(11)(E). The first issue which must be resolved is whether the entire amount which Debtor seeks to exempt under § 522(d)(11)(E) can properly be categorized as representing compensation for loss of future earnings or whether a portion of the amount must be categorized as compensation for loss of

past earnings. *See In re Hanson,* 226 B.R. 106, 108 (Bankr.D.Idaho 1998); *In re Bova,* 205 B.R. at 477; *In re Cramer,* 130 B.R. 193, 194 (Bankr.E.D.Pa.1991).

The Debtor claims his injuries have left him "unable to perform substantial and material parts of gainful work with reasonable continuity," and that since August 23, 1993, he has been able to earn only a "sporadic" and "insubstantial" income. (Debtor's Certification in Further Opposition ¶¶ 6–7.) According to the Debtor, prior to the accident he was earning approximately $50,000 annually as a real estate broker. He now claims to make only $6,000 per year. These particular claims of the Debtor are supported by his personal injury attorney. (Certification of Paul Faugno, Esq. ¶¶ 2–3.)

In opposition, the Trustee argues that she was kept uninformed of the true nature of the Debtor's personal injury action and that she believed Debtor's medical malpractice claim to be for pain and suffering only, not lost wages. She also asserts that had she known the true nature of Debtor's action, she would have insisted that he retain an expert to analyze the potential value of his lost wages claim. This particular allegation is refuted by Debtor's personal injury attorney who contends that the Debtor made it well known that he was claiming lost wages as a result of his injury. (Certification of Paul Faugno, Esq. ¶ 2.)

The Court, once again, finds the Trustee's arguments unpersuasive. As stated previously, Federal Rule of Bankruptcy Procedure 4003(c) places the burden of proving that an exemption has been improperly claimed on the party objecting to the exemption. In this case, the Trustee has failed to provide the Court with any case law, or procedural mandates which supports the argument that, as Trustee, she should have been made aware that the Debtor's malpractice action included a claim for lost wages. Additionally, this

---

**2.** As stated above, this figure represents the balance of the Debtor's settlement award, after attorney's fees and court costs. This figure also presumes the Court's allowance of Debtor's claimed exemptions under § 522(d)(11)(D) and § 522(d)(5).

Court finds it difficult to fathom that the complaint filed by the Debtor in his medical malpractice action would not have included a broadly worded *ad damnum* clause which could be construed to encompass a claim for lost wages.

The final issue with regard to the Debtor's § 522(d)(11)(E) exemption is whether the entire amount claimed is reasonably necessary for debtor's support. *See In re Hanson,* 226 B.R. at 108; *In re Bova,* 205 B.R. at 477; *In re Cramer,* 130 B.R. at 195–196. The Debtor claims that he was forced to miss a full six months of work due to his injury. Moreover, once he was able to return to work, his continuing poor physical condition limits him to only part-time employment. (Debtor's Certification in Opposition ¶ 20.) The Trustee does not dispute the economic hardships allegedly suffered by the Debtor as a result of his injury. Therefore, the Court finds that the Debtor may properly exempt $23,-635.16 of the proceeds of his personal injury settlement.

### B. The Debtor is Entitled to Exempt the Remainder of the Settlement Proceeds Under § 522(d)(5).

■ The Debtor contends that he is entitled to exempt $8,925 of his interest in the proceeds of the medical malpractice settlement pursuant to § 522(d)(5)[3]. Under this exemption, a debtor is allowed a general exemption of $850, plus up to $8,075 of the unused portion of the homestead exemption. See 11 U.S.C. § 522(d)(5). In this case, initially the Debtor, who does not own a home, decided to utilize the unused portion of his homeowner's exemption to exempt the proceeds of an ongoing civil suit initiated by him against his former employer, J.W. Burke & Co. However, when the Debtor amended his Schedule C exemptions he revised his § 522(d)(5) exemption to apply to the proceeds of his medical malpractice claim.

The Trustee argues that the Debtor should not be allowed to amend his exemptions simply because his medical malpractice claim has bore fruit, while his breach of contract claim continues in litigation. The Trustee asserts that this is unfair to the general unsecured creditors. The Bankruptcy Code and case law dictate otherwise. First, Rule 1009(a), Federal Rules of Bankruptcy Procedure, permits the debtor to amend his schedules at any time before the case is closed. Moreover, courts have held that exemptions are one-time benefits conferred upon the debtor by statute and, only once used to the full amount possible they are of no further benefit to the debtor. *See United States v. Christensen,* 200 B.R. 869, 872 (D.S.D. 1996); *In the Matter of Baugh,* 15 B.R. 435, 436 (Bankr.W.D.Mo.1981).

Accordingly, the Court finds that the Debtor retains the full value of his § 522(d)(5) exemption because, prior to the amendment of the Schedule C, the civil suit against J.W. Burke & Co. did not result in a judgment or settlement in favor of the Debtor. The Court notes that had either a settlement or judgment in favor of the Debtor occurred in the J.W. Burke & Co. lawsuit, those funds would certainly been credited against the § 522(d)(5) exemption. The Court, therefore, finds that the Debtor is allowed to exempt $8,925 of his interest in the proceeds of the medical malpractice settlement pursuant to § 522(d)(5).

### CONCLUSION

For the reasons expressed herein, the Court hereby denies the Trustee's Objection to the Debtor's Amended Schedule C.

### ORDER DENYING TRUSTEE'S OBJECTION TO DEBTOR'S AMENDED EXEMPTIONS

This matter having been brought before this Court upon an objection filed by For-

---

**3.** Section 522(d)(5) of the Bankruptcy Code states as follows:

(d) The following property may be exempted under subsection (b)(1) of this section:

(5) The debtor's aggregate interest in any property not to exceed in value $850 plus up to $8,075 of any unused amount of the exemption provided under paragraph (1) of this subsection.

man, Holt & Eliades, LLC, on behalf of Barbara A. Edwards, Chapter 7 Trustee, seeking to disallow certain exemptions claimed by the Debtor on his Amended Schedule C, and the Court having considered the motion, in light of the record in this case; and having conducted a hearing on December 7, 1999; and having issued a written Opinion on this date, the terms of which are incorporated herein by reference;

**IT IS** on this 14th day of January 14, 2000

**ORDERED** that Trustee's Objection seeking to disallow certain exemptions claimed by Debtor on his Amended Schedule C is, hereby denied pursuant to 11 U.S.C. §§ 522(d)(5), 522(d)(11)(D), and 522(d)(11)(E); and

**IT IS FURTHER ORDERED** that the Trustee is directed to turnover the balance of the Debtor's personal injury funds in the amount of $48,710.16 to the Debtor within ten (10) days from the date of this order.