**In re John J. RAUSER, Debtor.**

**No. 02–30038(LMW).**

United States Bankruptcy Court,
D. Connecticut.

July 28, 2004.

David G. Volman, Shelton, CT, for Debtor.

Richard Belford, Belford and Belford, New Haven, CT, Chapter 7 Trustee.

## MEMORANDUM OF DECISION RE: TRUSTEE'S OBJECTION TO DEBTOR'S FOURTH AMENDED SCHEDULE C

LORRAINE MURPHY WEIL, Bankruptcy Judge.

The matter before the court is the chapter 7 trustee's (the "Trustee") Partial Objection to Debtor's Claim of Exemption (second [sic] Amended Schedule C) (Doc. I.D. No. 25, the "Objection").[1] This is a core proceeding within the purview of 28 U.S.C. § 157(b). This memorandum constitutes the findings of fact and conclusions of law mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure (made applicable to this contested matter by Rule 9014 of the Federal Rules of Bankruptcy Procedure).

## I. PROCEDURAL BACKGROUND

This Chapter 7 case was commenced by a petition filed by the above-captioned debtor (the "Debtor") on January 3, 2002. The Debtor filed a complete set of schedules (included in Doc. I.D. No. 1, the "Original Schedules") with his petition. Among other things, the Debtor listed on his Original Schedules: his interest in a "[p]ersonal [i]njury [c]ase" (the "Personal Injury Claim") with a stated value of $1.00 (see Doc. I.D. No. 1 (Schedule B—Personal Property)); and an interest in certain real property with a stated gross value of $220,000.00 (the "Property") located in Seymour, Connecticut (see Doc. I.D. No 1 (Schedule A—Real Property)). In Schedule C of the Original Schedules, the Debtor listed the following exemptions (among others): an exemption of his interest in the Personal Injury Claim (allegedly pursuant to Bankruptcy Code §§ 522(d)(5) and 522(d)(1) [sic] (D and E)); and an exemption of his interest in the Property in the amount of $22,500.00 (allegedly pursuant to Bankruptcy Code § 522(d)(1)). (See Doc. I.D. No. 1 (Schedule C—Property Claimed as Exempt).)

On March 14, 2002, the Debtor filed amended Schedules A and C which superceded the Original Schedules in relevant respects. (See Doc. I.D. No. 4, the "First Amended Schedules.") The First Amended Schedules: restated the gross value of the Property as $200,000.00 (see Doc. I.D. No. 4 (Amended Schedule A—Real Property)); and reduced the exemption in respect of the Property to $12,500.00 (see Doc. I.D. No. 4 (Amended Schedule C—Property Claimed as Exempt) ("First Amended Schedule C")).[2] On March 22, 2004, the Debtor filed amended Schedules B, C and F (Doc. I.D. No. 13, the "Second Amended Schedules") which superceded the First Amended Schedules in relevant respects. Among other things, the Second Amended Schedules: increased the stated value of the Personal Injury Claim to $15,506.67 (see Doc. I.D. No. 13 (Amended Schedule B—Personal Property)); and increased the amount of the exemption in respect of the Property to $45,000.00 (and the gross value of the Property to $220,000.00) (see Doc. I.D. No. 13 ([amended] Schedule C—Property Claimed as Exempt) (the "Second Amended Schedule C")).

On April 5, 2004, the Trustee filed the Original Objection objecting to the exemptions claimed in the Second Amended Schedule C with respect to the Property and the Personal Injury Claim. On April 19, 2004, the Debtor filed an amended Schedule C (see Doc. I.D. No. 24, the

---

1. The Objection supercedes Doc. I.D. No. 16 (the "Original Objection").

2. On April 24, 2003, the Trustee filed a report of abandonment of the estate's interest in the Property. (See Doc. I.D. No. 10.)

"Third Amended Schedule C") which superceded the Second Amended Schedule C in two relevant respects: the Third Amended Schedule C reduced the amount of the claimed exemption in respect of the Property to $17,425.00; and changed the claimed statutory basis for the exemption in respect of the Personal Injury Claim from Bankruptcy Code §§ 522(d)(5) and 522(d)(1)[sic](D and E) to Bankruptcy Code §§ 522(d)(5) and 522(d)(1)[sic](D). On May 12, 2004, the Debtor filed an amended Schedule C (*see* Doc. I.D. No. 33, the "Fourth Amended Schedule C") which superceded the Third Amended Schedule C in one relevant respect: the Fourth Amended Schedule C corrected the claimed statutory basis for the exemption in respect of the Personal Injury Claim from Bankruptcy Code §§ 522(d)(5) and 522(d)(1)[sic](D) to Bankruptcy Code §§ 522(d)(5) and 522(d)(11)(D).

On April 28, 2004, the Trustee filed the Objection. The Objection refers to the Second Amended Schedule C (but shall be deemed to refer to the Fourth Amended Schedule C). The Objection addresses only the exemption in respect of the Personal Injury Claim. The Objection asserts that the asserted statutory basis for such exemption is inapplicable on its face (a defect since addressed by the Fourth Amended Schedule C), and further "objects on the ground that the [D]ebtor's permanent injury, which is nominal, does not justify said exemption." (Doc. I.D. No. 25 ¶ 1.)[3]

A hearing (the "Hearing") on the Objection was held on May 26, 2004. No witnesses were called at the Hearing. However, documentary evidence was presented by the Debtor and admitted into the record without objection from the Trustee.[4] At the close of the Hearing, the court took the matter under advisement.

## II. FACTS

The Personal Injury Claim arose out of a prepetition automobile accident in which the Debtor sustained a permanent injury to his cervical spine. (Transcript at 6; Hearing Exhibit No. 2 (letter from Dr. Katz).) On April 5, 2004, the Trustee filed a motion to compromise the Personal Injury Claim for $25,000. (*See* Doc. I.D. No. 14.) It is uncontested that, if there were no limits on recovery, the Personal Injury Claim would be "worth" $55,000.00. (Transcript at 7, 9; Hearing Exhibit No. 1.) However, the limit of the tortfeasor's liability insurance policy was $25,000.00, no other insurance was available and the prospects for collection of the Personal Injury Claim from sources other than insurance were uncertain. (Transcript at 7.)[5] Accordingly, the court approved (without objection) a settlement of the Personal Injury Claim for the limits of the available

---

**3.** A further objection (the "Further Objection"), although not raised on the face of the Objection was argued by the parties at the Hearing (as defined below) as if it had been so raised. Accordingly, the court will deem the Further Objection to have been raised in the Objection.

**4.** Citations to the record of the Hearing appear herein in the following form: "Transcript at ___." Citations to exhibits admitted into evidence at the Hearing appear herein in the following form: "Hearing Exhibit No. ___."

**5.** The Debtor's underinsured motorist coverage under his own insurance policy had a limit for recovery of bodily injury of $20,000.00. Recovery from the Debtor's underinsured motorist coverage was available only in the event that coverage available under the tortfeasor's policy was less than $20,000. As noted above, the tortfeasor's policy had an available limit of $25,000. Consequently, no recovery was available against the Debtor's underinsured insurance coverage.

coverage (*i.e.*, $25,000, the "Settlement Fund"). (*See* Doc. I.D. No. 29.) Also without objection, the court further authorized the Trustee to pay $8,868.33 out of the Settlement Fund to personal injury counsel in payment of his fees and reimbursement of his expenses (collectively, the "Fees").

## III. THE FURTHER OBJECTION

The Trustee now is in possession of the Settlement Fund and the primary issue addressed by the parties at the Hearing was resolution of the Debtor's and the Trustee's claims to this limited fund. It is the Debtor's position that he is entitled to be paid out of the Settlement Fund first (after payment of the Fees) until the entire amount of his claimed exemption has been paid in full. Such payment would leave only $625.00 out of the Settlement Fund (after payment of the Fees) for the estate.[6] On the other hand, the Trustee argues that the Settlement Fund should be paid to the Debtor only on a prorated basis at the same ratio that the exempt portion of the undiscounted value of the Personal Injury Claim (which the Debtor alleges to be $20,000.00) bears to the undiscounted value of the entire Personal Injury Claim (*i.e.*, $55,000). The question so presented appears to be one of first impression.

## IV. ANALYSIS

### A. *In General*

Bankruptcy Code § 522(d) provides in relevant part as follows:

(d) The following property may be exempted under subsection (b)(1) of this section:

6. As noted, the court authorized total payment of Fees of $8,868.33 (*i.e.*, attorney's fees of $8,333.33 plus expenses of $535.00 (*see* Doc. I.D. No. 29)). Consequently, after pay-

(1) The debtor's aggregate interest, not to exceed $17,425 in value, in real property . . . that the debtor . . . uses as a residence . . . .

.     .     .     .     .

(5) The debtor's aggregate interest in any property, not to exceed in value $925 plus up to $8,725 of any unused amount of the exemption provided under paragraph (1) of this subsection.

.     .     .     .     .

(11) The debtor's right to receive, or property that is traceable to—

.     .     .     .     .

(D) a payment, not to exceed $17,425, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor . . . .

11 U.S.C.A. § 522(d) (West 2004). When an objection to an exemption is adjudicated, "the objecting party has the burden of proving that the exemptions are not properly claimed," Fed. R. Bankr.P. 4003(c).

### B. *Exemption Under Bankruptcy Code § 522(d)(5)*

The Debtor exhausted his exemption under Section 522(d)(1) by his exemption of his interest in the Property. That fact limits his exemption of the Personal Injury Claim under Section 522(d)(5) to $925.00. That exemption has not been challenged by the Trustee.

### C. *Bankruptcy Code § 522(d)(11)(D)*

#### 1. *Value of the Exempt Portion of the Undiscounted Personal Injury Claim*

■ Hearing Exhibit No. 1 is a copy of a letter from the relevant personal injury

ment of the Fees, $16,131.67 of the Settlement Fund remains, and not $15,506.67 as alleged by the parties.

counsel to the Trustee explaining (among other things) the components of the Personal Injury Claim. That letter states in relevant part as follows:

> Had no restriction been given on a recoverable insurance policy this case should have resolved at or about Fifty Five Thousand and No/100 Dollars ($55,000.00).... Based on ... Mr. Rauser's age, and his continuing pain I would attribute a figure to the permanent partial loss of use of his body of Twenty Thousand and NO/100 Dollars. Had there been no restrictions on Mr. Rauser's recovery due to policy restrictions Mr. Rauser could have expected to recover at least this much attributable to his permanency [the "Permanency"].

(Hearing Exhibit No. 1.) The Trustee notes that the statutory exemption is not applicable to "pain and suffering" awards. *Cf. In re Marcus*, 172 B.R. 502, 505 (Bankr.D.Conn.1994) (Krechevsky, J.) (Exemption does not exempt benefits for physical discomfort and distress.). Accordingly, the Trustee further argues, the personal injury attorney's reference to the Debtor's age and continuing pain level make the Debtor's evidence of the value of the Permanency sufficiently ambiguous so that the Section 522(d)(11)(D) exemption must be reduced even in the absence of other evidence by the Trustee. The court does not agree and no reduction will be ordered in that regard. However, the exempt portion of the undiscounted Personal Injury Claim nevertheless must be reduced to the statutory maximum (*i.e.*, $17,425.00). That is because the amount "trace[d]" (and thus exempted) under Section 522(d)(11)(D) is not capped by the statutory maximum but, rather, it is the statutory maximum (or some lesser amount) which itself must be "trace[d]" under the statute. *See* 11 U.S.C. § 522(d)(11)(D).

### 2. *Priority of Claims Against the Settlement Fund*

■ The Debtor's claim against the Settlement Fund is limited to amounts "traceable" to the exempt portion of the undiscounted Personal Injury Claim. *See* 11 U.S.C. § 522(d)(11)(D). The order approving the settlement (and payment of the Fees) which produced that fund did not allocate it between the exempt and non-exempt portions of the undiscounted Personal Injury Claim. Accordingly, the Debtor must "trace[ ]" the exempt portion of the undiscounted Personal Injury Claim (*i.e.*, $17,425.00) into the Settlement Fund using appropriate tracing rules.

■ "Tracing" commonly becomes an issue when two claimants lay claim to a fund insufficient to pay both in full. Different tracing rules apply when one of the competing claimants for the fund is in some sense culpable rather than when the dispute is between two innocent parties. *Compare* Restatement (Second) of Trusts § 202 (1959), comments i and j *with id.*, comment n. If the competitors for the fund are each equally blameless, the fund generally is distributed to them on a prorated basis. *Cf. id.*, comment n (fund is distributed to two innocent beneficiaries on a prorated basis). By seeking priority over the Trustee, the Debtor would treat the Trustee as culpable. *Cf. id.*, comments i and j. However, the Trustee settled the Personal Injury Claim with court approval and, accordingly, no culpability can be ascribed to him in so settling. Therefore, the rule of proration applies because both the Trustee and the Debtor are blameless here.

■ Alternatively, proration equitably shares the "pain" of the tortfeasor's failure to adequately insure between the Debtor and his creditors. Accordingly, the court has the discretion to elect that method of

tracing. *Cf. General Electric Company Business Lighting Group v. Halmar Distributors, Inc. (In re Halmar Distributors, Inc.)*, 232 B.R. 18, 25 (Bankr.D.Mass.1999) ("[A]dherence to specific equitable principles, including rules concerning tracing analysis are 'subject to the equitable discretion of the court.'") (citation omitted).[7]

### D. *Calculation*

Based upon the foregoing, the Debtor's exempt share of the Settlement Fund is $8,845.45 calculated as follows: $25,000.00 (*i.e.*, the amount of the Settlement Fund) times $17,425.00 (*i.e.*, the capped amount of the value of the Permanency) divided by $55,000.00 (*i.e.*, the value of the entire, undiscounted Personal Injury Claim), plus $925.00 (i.e., the amount of the Debtor's Section 522(d)(5) exemption).[8]

### V. *CONCLUSION*

An order will enter sustaining the Objection in part and overruling it in part and stating that the Debtor's exempt share of the Settlement Fund is $8,845.45.

---

7. It is often said that exemption laws must be liberally construed in favor of the debtor. *See, e.g.,* 31 Am.Jur.2d *Exemptions* § 17 (2002). *See also In re Scotti*, 245 B.R. 17, 20 (Bankr.D.N.J.2000). However, the foregoing is a rule of statutory construction which is used only when the language of the statute itself (and relevant legislative proceedings/history) are not dispositive. *See* 73 Am.Jur.2d *Statutes* § 62 (2001) ("[S]ince all rules for the interpretation of statutes of doubtful meaning have for their sole object the discovery of legislative intent, every technical rule as to the construction of a statute must yield to the expression of the paramount will of the legislature."). *See also National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 457, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974) ("[E]ven the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent."). Here, the appearance of the word "traceable" in the statute gives sufficient evidence of a legislative intent that established rules of tracing be employed such that resort to rules of construction would be inappropriate.

8. The Trustee has not argued that the Fees should be equitably apportioned between the estate's share and the Debtor's share of the Settlement Fund. Accordingly, the court adopts the same approach.